RECEIVED
OCT 05 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY TP
DEPUTY CLERK

FILED
OCT 05 2026
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY CR
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

*In re Ex Parte* Application of

SM ENTERTAINMENT CO., Ltd.,

Applicant.

Case Number:

1:26MC02833 ABD

**EX PARTE APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND SUPPORTING MEMORANDUM**

The Applicant, SM ENTERTAINMENT CO., Ltd. (hereinafter "**Applicant**"), hereby moves, *ex parte* under Section 1782 of Title 28 of the United States Code, for an order authorizing limited discovery for use in foreign proceedings (hereinafter "**Application**"). The Applicant seeks limited discovery from X Corp. (hereinafter "**X**"). This Application is supported by the supporting memorandum included herein and the Declarations of Harim Lee, Yundo Jeong, and Daniel Chang which were filed contemporaneously herewith. The proposed subpoena to be served on X is attached to this Application as Exhibit A.

## SUPPORTING MEMORANDUM

### I. BACKGROUND

The Applicant is a company incorporated and doing business in the Republic of Korea. Lee Decl. ¶¶ 2–4. It manages the K-pop group RIIZE, whose former member Seunghan withdrew from the group in October 2024. *Id.* ¶¶ 8–9, 18–19.

An anonymous individual (hereinafter "**User 1**") used the X account @RIIZEUSACENTRE (https://x.com/RIIZEUSACENTRE), and another anonymous individual (hereinafter "**User 2**"; User 1 and User 2 are hereinafter collectively "**Users**") used the X account @rii7eunion (https://x.com/rii7eunion). *Id.* ¶¶ 10–11. Their activities included criticism of the Applicant, allegations concerning its treatment of Seunghan, calls for boycotts, and coordinated hashtag campaigns. *Id.* ¶ 12. The Korean Action described below concerns both allegedly unlawful statements and alleged interference with the Applicant's business. *Id.* ¶¶ 13, 57–60.

For purposes of this Application, the Applicant relies principally upon the Users' coordination of repeated submissions on the KWANGYA 119 website operated by the Applicant, including User 1's instructions to X users to use multiple accounts, and User 1's organization of physical placements without required authorization. *Id.* ¶ 14; Jeong Decl. ¶ 12.

The Applicant operates KWANGYA 119, an online reporting center for incidents concerning its artists. Lee Decl. ¶¶ 22–24. During the relevant period, its published guidance stated that users could not submit another report to the same board for ten minutes and that repetitive reports could be closed without response, potentially restricting further submissions. *Id.* ¶¶ 25–29. Submission requires a registered SMTOWN account. *Id.* ¶¶ 28–29.

User 1 directed followers to submit reports demanding Seunghan's reinstatement and instructed them to create at least five accounts, clear cache, and cycle airplane mode before reporting again. *Id.* ¶¶ 31–33, Ex. 1. User 1 also published cumulative submission totals and urged further reporting. *Id.* ¶ 34. An October 15, 2024 daily report recorded approximately 3,368 Seunghan-related submissions classified as spam or organized posting. *Id.* ¶ 35, Ex. 2. Based on the Applicant's review of a substantial sample, their similarity, and their timing, a substantial number of the submissions were submitted at the direction of User 1. *Id.* ¶ 36.

User 1 also solicited funds and arranged physical installations near the Applicant's Seoul headquarters, some of which occupied regulated public space without authorization. *Id.* ¶¶ 37–45, Exs. 3–7.

User 2 published recurring campaign schedules, KWANGYA reporting schedules, and submission templates and links. *Id.* ¶¶ 46–51, Exs. 9–13.

The Applicant received approximately 32,785 KWANGYA submissions concerning Seunghan's return between October 15, 2024 and August 7, 2025. *Id.* ¶ 52. A substantial number of the submissions were submitted at the direction of the Users based upon similarity and timing. *Id.* ¶¶ 53–54. The repeated submissions required significant personnel time to review and filter, and the unauthorized objects required personnel time to address. *Id.* ¶¶ 55–56.

The X platform is a social media website operated by X.[1] X's address is 865 FM 1209, Building 2, Bastrop, Texas 78602. Jeong Decl. ¶ 6, Ex. 1.

The Applicant filed a civil lawsuit on September 10, 2025 against the Users in the Seoul Eastern District Court in the Republic of Korea (hereinafter "**Korean Action**"). Lee Decl. ¶ 57; Jeong Decl. ¶¶ 7–8. The Applicant is seeking injunctive relief against the Users for their actions. Lee Decl. ¶¶ 58–60.

The Applicant seeks relief under the Korean doctrine of obstruction of business by force. Jeong Decl. ¶¶ 9–12. The Applicant is seeking to identify the Users so that the Applicant can proceed with the Korean Action. Lee Decl. ¶¶ 61–62; Jeong Decl. ¶¶ 13–16.

Therefore, the Applicant is asking that this Court authorize the Applicant to conduct limited discovery by serving a subpoena upon X, which is located in this district, to discover personal identifying information (hereinafter "**PII**") that can be used to identify the Users and serve them

[1] X, https://en.wikipedia.org/wiki/X_(social_network) (last visited May 10, 2026).

with legal process in the Korean Action. Lee Decl. ¶¶ 61–62. The Applicant has been unable to serve the Users and cannot compel X to disclose their identities through the Korean court because Korean courts lack jurisdiction over X. Jeong Decl. ¶¶ 13–17.

## II. *EX PARTE* CONSIDERATION OF SECTION 1782 APPLICATION

"Section 1782 petitions are often initially considered *ex parte*." *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758 (5th Cir. 2024). "[O]nce the target of the requested discovery is served, that target may resist the discovery demands, often via a motion to quash." *Id.* Therefore, it is proper for this Court to consider this Application on an *ex parte* basis because the target of the requested discovery, X, will be given an opportunity to resist the discovery demand.

## III. LEGAL STANDARD

Three statutory requirements must be satisfied before a district court may grant assistance under Section 1782(a): (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person. 28 U.S.C. § 1782(a); *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 F. App'x 319, 322 (5th Cir. 2015) (citing *Tex. Keystone, Inc. v. Prime Natural Res., Inc.*, 694 F.3d 548, 553-54 (5th Cir. 2012)).

The Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.* identified four discretionary factors to guide a district court's decision whether to authorize discovery under Section 1782. These factors are: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, such that the person, unlike a nonparticipant, is amenable to discovery in the foreign forum and the discovery may be unobtainable in that forum; (2) the nature

of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government or forum to U.S. federal court assistance; (3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004); *see Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022).

The party seeking discovery need not establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel Corp.*, 542 U.S. at 247, 261–63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist [in the United States]." *Id.* at 263 (words in brackets added).

A district court may order the production of documents or testimony for use in a foreign legal proceeding under Section 1782 as long as the disclosure would not violate a legally applicable privilege. *Id.* at 260.

A district court's discretion is informed by the twin aims of Section 1782, which are to provide efficient means of assistance to participants in international litigation through U.S. federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts. *Tex. Keystone, Inc.*, 694 F.3d at 553–54.

## IV. ARGUMENT

### A. The Applicant satisfies all of the requirements of Section 1782.

The Applicant satisfies all three requirements of Section 1782. The first requirement is satisfied because X "resides or is found" in this district for the reason that X's address is in Bastrop,

Texas, which is in this district. Jeong Decl. ¶ 6, Ex. 1; *see Man of Creation Co. v. X Corp.*, No. 1:26-mc-01986, 2026 WL 2211788, at *1 (W.D. Tex. July 30, 2026) (finding that X resides in Bastrop County in the Austin Division of this district); *Goatley v. X Corp.*, No. 1:26-mc-02146, 2026 WL 2364780, at *1 (W.D. Tex. Aug. 14, 2026) (same).

To satisfy the second requirement, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Intel Corp.*, 542 U.S. at 259. Instead, all that is required by Section 1782 is that a future proceeding is "within reasonable contemplation." *Id.* at 243, 259 (holding that the district court had authority to consider the request under Section 1782 even though the applicant's complaint was still only in the investigative stage). The second requirement is satisfied because the discovery sought is for purposes of the Korean Action that is pending in the Seoul Eastern District Court. Lee Decl. ¶ 57. The requested information will enable the Applicant to identify and serve the Users and proceed against them in that action. *Id.* ¶¶ 57, 61–62; Jeong Decl. ¶¶ 7–8, 13–16.

The third requirement is satisfied because the Applicant, as the plaintiff in the Korean Action, is an interested person. Lee Decl. ¶ 57; Jeong Decl. ¶¶ 7–8; *see Intel Corp.*, 542 U.S. at 256 (litigants may be the most common example of interested persons).

Therefore, the Applicant satisfies all of the requirements of Section 1782 and this Court can authorize discovery from X.

**B. The Supreme Court's *Intel* factors favor granting the Application.**

The discretionary factors identified by the Supreme Court in *Intel* weigh in favor of the Court granting the Applicant's request for discovery.

The first *Intel* factor considers whether the person from whom discovery is sought is a participant in the foreign proceeding, such that the person, unlike a nonparticipant, is amenable to

discovery in the foreign forum and the discovery may be unobtainable in that forum. *Intel Corp.*, 542 U.S. at 264; *Banca Pueyo SA*, 55 F.4th at 473. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264. X will be a nonparticipant in the Korean Action. Jeong Decl. ¶ 17. Furthermore, X is located in this district. *Id.* ¶ 6, Ex. 1. For the foregoing reasons, X is outside the Republic of Korea's jurisdictional reach, and hence, evidence available in the United States from X is unobtainable by the Applicant absent Section 1782(a) aid. *Id.* ¶¶ 14, 17; *see Intel Corp.*, 542 U.S. at 264. Therefore, this first factor weighs in favor of authorizing discovery.

The second *Intel* factor requires the Court to consider "the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government or forum to U.S. federal court assistance." *Intel Corp.*, 542 U.S. at 264; *Banca Pueyo SA*, 55 F.4th at 473. Under this factor, courts look for evidence that the foreign tribunal would be unreceptive to the discovery sought through Section 1782(a) aid. *See In re CTS Research, Inc.*, No. 1:25-mc-01284-ADA-SH, 2025 WL 3453961, at *2 (W.D. Tex. Sept. 24, 2025) (report and recommendation) (citing *In re Path Network, Inc.*, 703 F. Supp. 3d 1046, 1064 (N.D. Cal. 2023)). In the absence of evidence that a foreign court would object to the discovery of the information sought in the subpoena, or that a foreign court objects more generally to the judicial assistance of U.S. federal courts, this factor weighs in favor of authorizing discovery. *See, e.g., In re Med. Corp. H&S*, No. 19-mc-80058-VKD, 2019 WL 1230440, at *3 (N.D. Cal. Mar. 15, 2019).

There are no known restrictions imposed by, or any policies under, the laws of the Republic of Korea limiting U.S. federal court judicial assistance, and courts in the Republic of Korea are receptive to assistance in discovery by United States federal courts, including for discovery of PII

of individuals posting anonymous online statements. Jeong Decl. ¶¶ 18–19. In fact, courts of the Republic of Korea as well as litigants in the Republic of Korea have sought judicial assistance from federal courts in the United States and federal courts in the United States have granted Section 1782 discovery for use in proceedings in the Republic of Korea. *E.g., In re Request for Judicial Assistance from Seoul Central District Court in Seoul, Republic of South Korea*, No. 23-mc-80016-BLF, 2023 WL 2394545 (N.D. Cal. Mar. 7, 2023); *In re Starship Entertainment Co., Ltd.*, No. 23-mc-80147-BLF, 2023 WL 3668531 (N.D. Cal. May 24, 2023). Likewise, a court in this district applying this exact factor to a similar request (a Section 1782 subpoena to X Corp. to identify an anonymous defendant) recently found this factor to be satisfied because there was no evidence that the foreign court would be unreceptive to the discovery sought. *See In re CTS Research, Inc.*, 2025 WL 3453961, at *2 ("there is no evidence that the Canadian court would be unreceptive to the discovery sought here") (citing *In re Path Network, Inc.*, 703 F. Supp. 3d at 1064 ("[t]here is nothing in the record to imply, much less expressly indicate, that the Canadian Court would reject any evidence produced by Discord in response to a properly issued subpoena under Section 1782")).

Because there is evidence showing that courts in the Republic of Korea are receptive to United States federal court judicial assistance, and because there is nothing to show that courts in the Republic of Korea would object to discovery of the information sought by this Application, this factor weighs in favor of authorizing discovery.

The third *Intel* factor is "whether the 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions." *Intel Corp.*, 542 U.S. at 264–65; *Banca Pueyo SA*, 55 F.4th at 473. Courts have found that this factor weighs in favor of discovery absent a persuasive showing that a section 1782 applicant is actively seeking to circumvent the foreign tribunal's discovery

methods and restrictions. *In re Application of Oasis Focus Fund LP*, No. 1:23-CV-00239-DII, 2023 WL 6278882, at *4 (W.D. Tex. Sept. 26, 2023) (report and recommendation), adopted, No. 1:23-cv-239-DII, 2023 WL 7238594 (W.D. Tex. Nov. 2, 2023) (citing *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012)). "Only where the materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated." *In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020).

The Applicant is not attempting to circumvent any foreign proof-gathering restrictions or other policies of the Republic of Korea or the United States. Jeong Decl. ¶ 20. Because there is nothing to suggest that the Applicant is attempting to circumvent foreign proof-gathering restrictions or policies, this factor weighs in favor of authorizing discovery.

The fourth and final *Intel* factor is "whether the request is unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265; *Banca Pueyo SA*, 55 F.4th at 473. Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad "fishing expedition" for irrelevant information. *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). The discovery sought by the Applicant is narrowly tailored to seek only sufficient information to identify the Users, and is not unduly intrusive or burdensome, because the Applicant is seeking discovery of only PII such as names, dates of birth, addresses, e-mail addresses, telephone numbers, bank names and account numbers, and the ten most recent access-log entries for each identified X account. Ex. A; Jeong Decl. ¶¶ 21–28, 30, 32–34. Request No. 1 includes the same identifying fields in advertising, monetization, or payment accounts registered to, linked to, or otherwise associated with the identified X accounts, to the extent those records are within X's possession, custody, or control.

Jeong Decl. ¶ 24. Courts in this District have authorized similar discovery. *See Man of Creation Co.*, 2026 WL 2211788, at *1; *Goatley*, 2026 WL 2364780, at *1.

The Users' names, addresses, and dates of birth are sought to identify them for the Korean Action. Jeong Decl. ¶ 21. Telephone numbers and bank account information may permit further identification through the relevant providers, because where the records identify a Korean telecommunications company or bank, a Korean court order can be sought for identifying information held by that entity. *Id.* ¶¶ 22–23.

The discovery of the access-log entries, which consist of IP addresses and the corresponding dates and times at which those IP addresses were used, is relevant because identifying the subscriber associated with an IP address requires matching it to the provider's records for the relevant time. Jeong Decl. ¶¶ 25(c)–(h), 26. The request is limited to the ten most recent entries for each X account; it does not seek a complete history of account activity. Ex. A. Courts have found identification requests including access logs for limited periods to be narrowly tailored. See *In re Med. Corp. Seishinkai*, No. 22-mc-80282-EJD, 2023 WL 3726499, at *4 (N.D. Cal. May 30, 2023); *In re Bandai Namco Music Live Inc.*, No. 24-mc-80058-BLF, 2024 WL 1078429, at *4 (N.D. Cal. Mar. 12, 2024).

As for the scope of discovery, the Applicant is seeking the specified PII registered at any time, and not only for a specified period, because earlier registration information may identify the Users even if their current information does not. Jeong Decl. ¶ 32. Recent PII is also relevant because nonpublic information may remain unchanged. *Id.* ¶ 33.

Based upon the foregoing, the request is tailored to identification and service, and the Applicant submits that its need for the information justifies the limited production. If the Court

finds any category excessive, the Applicant requests appropriately narrowed discovery rather than denial of the Application in its entirety. *See Intel Corp.*, 542 U.S. at 265.

**C. Any First Amendment objection should be addressed if raised by X or the Users.**

At this *ex parte* stage, neither X nor either of the Users has appeared or raised a First Amendment objection. In two recent Section 1782 cases seeking identifying information from X, this Court concluded that, "at least at this juncture," it "need not resolve the extent to which any First Amendment rights may alter the section 1782 analysis." *Man of Creation Co.*, 2026 WL 2211788, at *2; *Goatley*, 2026 WL 2364780, at *2. In each case, the court authorized the subpoena while recognizing that X could move for reconsideration or move to quash, at which point the court would reassess its Section 1782 analysis. *Man of Creation*, 2026 WL 2211788, at *2; *Goatley*, 2026 WL 2364780, at *2. The Fifth Circuit likewise requires a district court to reconsider the statutory requirements and the *Intel* factors when a subpoena respondent challenges an *ex parte* Section 1782 order. *Banca Pueyo SA*, 55 F.4th at 474–76.

The Ninth Circuit's decision in *In re Gliner* supports the same approach. There, the district court denied an *ex parte* Section 1782 application based upon assumed First Amendment interests. The Ninth Circuit vacated the denial because the record did not establish that the anonymous speakers or any United States audience had First Amendment rights that would be affected by the requested discovery. *In re Gliner*, 133 F.4th 927, 933–35 (9th Cir. 2025). The Ninth Circuit explained that a relatively permissive approach was appropriate at the application stage because any applicable First Amendment protection could be afforded through a later challenge to the subpoena. *Id.* at 935.

The party-presentation principle further supports leaving any First Amendment objections for that later adversarial stage. Courts normally rely on the parties to frame the issues for decision

and act as neutral arbiters of the matters the parties present. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). *United States v. Sineneng-Smith* applied that principle in reversing a decision based upon a First Amendment overbreadth theory that the party had not raised. 590 U.S. 371, 374–76, 380 (2020). Although the party-presentation principle is "supple, not ironclad," courts "normally decide only questions presented by the parties." *Id.* at 376. The Court therefore need not decide a hypothetical First Amendment objection that neither X nor either User has raised. If X or a User later raises a concrete objection, the Court can address it on a developed adversarial record through reconsideration or a motion to quash.

## V. CONCLUSION

The Applicant satisfies the statutory requirements of Section 1782 and the *Intel* factors favor the limited discovery requested. In light of the twin aims of Section 1782 to provide efficient assistance to foreign litigants and to encourage foreign countries by example to provide similar assistance to United States courts, this Court should exercise its discretion to authorize discovery from X so that the Applicant can identify and serve the Users in the Korean Action.

Dated: September 19, 2026.

CARLOS M. TAITANO
CA State Bar No. 275820
Taitano & Taitano LLP
P.O. Box 326204
Hagatna, Guam 96932
Telephone: (671) 777-0581
Email: cmakototaitano@taitano.us.com

*Attorney for Applicant*
*SM ENTERTAINMENT CO., Ltd.*